UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 7335 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

John Doe brought this suit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*, and Illinois law against Loyola University of Chicago in connection with its handling of sexual misconduct complaints against him. Doc. 19. Loyola moves under Civil Rule 12(b)(6) to dismiss Doe's state law promissory estoppel and negligent infliction of emotional distress claims. Doc. 27. The motion is granted in part and denied in part.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Doe's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Doe as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the

1

pleading stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Loyola expelled Doe, an undergraduate student, after finding that he committed sexual misconduct. Doc. 19 at ¶ 4. Loyola reached its decision following investigations and hearings involving complaints lodged by two female undergraduate students. *Id*. at ¶¶ 2-3. In the first complaint, Jane Roe accused Doe of non-consensual sexual penetration in three separate encounters. *Id*. at ¶ 2. The second complaint, filed the same day by Elizabeth, was nearly identical to Roe's. *Id*. at ¶ 3. After an investigation and hearing on each complaint, Loyola found Doe "not responsible" as to Elizabeth's complaint but "responsible" as to Roe's and expelled him. *Id*. at ¶¶ 4, 145-146. Doe submitted an appeal, which Loyola's "Appellate Officer" rejected. *Id*. at ¶¶ 156-161.

Loyola's code of student conduct, titled *Community Standards 2016-2017*, set forth provisions aimed at securing a fair and just process for resolving sexual misconduct charges. *Id*. at ¶¶ 87-93. The code stated that "[a]ll complainants and respondents involved in the University's formal conduct process can expect" that Loyola would afford them certain protections. *Id*. at ¶ 89. Among other things, the code provided that the complainant and respondent would "have the opportunity to review any investigative report after the investigation has concluded but before a formal hearing," *ibid*., later specifying that each would "have at least two (2) days [before the hearing] to review the Final Investigation Report," *id*. at ¶ 92. The code also provided that "[b]oth parties may present evidence throughout the investigation, including proposing witnesses to be considered for interviewing." *Id*. at ¶ 89. The code assured that university investigators would "separately interview relevant witnesses that can provide a firsthand account of something seen, heard, or experienced relating to the alleged incident." *Id*.

2

at ¶ 91. And the code stated that "each party may choose to be accompanied by one advisor of their choice … at any point in time throughout the conduct process." *Id*. at ¶ 89.

Loyola also made representations directly to Doe. On November 4, 2016, Timothy Love—then the university's Associate Dean of Students and Interim Title IX Coordinator—told Doe that, in order "to preserve the impartiality and fairness of the hearing process, each complaint … will result in separate and distinct investigative reports, which will then each be heard by separate and distinct Hearing Boards (with different personnel serving on each board)." *Id*. at ¶¶ 95-96.

According to Doe, Loyola did not comply with those procedures. Because Loyola initially provided Doe with the incorrect version of its investigative report for the Roe complaint, he had less than 48 hours to review the correct version before the Roe hearing. *Id*. at ¶ 116. Although Doe identified two individuals with relevant exculpatory information, Loyola's investigators did not interview them. *Id*. at ¶¶ 107-108. Love wrongly told Doe that he was *not* entitled to have an advisor present at his interview with investigators, and that error was not corrected in time for Doe to secure an advisor's presence for his interview. *Id*. at ¶¶ 102-105. And rather than having two "separate and distinct" hearing boards, the chairperson and other members of the Roe hearing board were informed of Elizabeth's complaint. *Id*. at ¶ 97.

## Discussion

Doe raises a federal claim under Title IX and state law claims for breach of contract, promissory estoppel, and negligent infliction of emotional distress. Loyola moves to dismiss only the promissory estoppel and negligent infliction of emotional distress claims.

### I. Promissory Estoppel

Doe's promissory estoppel claim, pleaded in the alternative to his contract claim, alleges that Loyola's representations concerning the procedures that would govern his disciplinary

3

proceedings were promises on which he "reasonably and justifiably relied to his detriment." *Id*. at ¶¶ 223-227. Under Illinois law, a promissory estoppel plaintiff must allege that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to [his] detriment." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009)) (internal quotation marks omitted). Loyola contends that the complaint fails to properly allege each element of the claim. Doc. 28 at 6-9.

As to the unambiguous promise element, Loyola relies on cases holding that representations set forth in university policies are insufficiently unambiguous if they reflect only a "general commitment to preventing discrimination," *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 961 (N.D. Ill. 2017), or "to broad principles of fairness and nondiscrimination without giving specifics about how those goals will be achieved," *Doe v. Univ. of Chi.*, 2017 WL 4163960, at *10 (N.D. Ill. Sept. 20, 2017). At the same time, "promises sufficient to support a claim of promissory estoppel may come from a defendant's policies and procedures manual" where the promises are "specific" rather than "general." *Ibid*.; *see also Columbia Coll. Chi.*, 299 F. Supp. 3d at 961.

The representations that Loyola made to Doe in its code and in Love's direct communications with him are far more specific than the general commitments to fairness and due process held insufficient in the above-cited cases. Rather than merely stating broad goals, Loyola's representations gave "specifics about how those goals will be achieved." *Univ. of Chicago*, 2017 WL 4163960, at *10. As noted, the code set forth specific time frames during which the respondent may review an investigative report before a hearing, the standard for

4

determining which witnesses should be interviewed, the right to advisors or counsel in interviews and hearings, and the separation of panels hearing different complaints. Those promises were definite and unambiguous. *See Brown-Wright v. E. St. Louis Sch. Dist. 189*, 2016 WL 1182803, at *4 (Ill. App. Mar. 24, 2016) (holding that an employee sufficiently pleaded a promissory estoppel claim by alleging that her employer's written policies "contained … specific and quantifiable" information concerning severance pay "using language that was clear and mandatory"); *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970, 976-77 (Ill. App. 2005) (finding "unambiguous" an insurer's promises to pay for certain services because they were "definite and complete" despite not being made in "the express form of a promise").

The complaint also sufficiently alleges that Doe relied on Loyola's promises and that such reliance was expected and foreseeable. Loyola's code set forth detailed procedures and made specific representations to students like Doe who faced high-stakes disciplinary proceedings. Because an individual in Doe's shoes would have had every reason to rely on those assurances, the court can infer at the pleading stage that Doe's reliance was reasonable and foreseeable as to Loyola.

As to whether Doe relied on Loyola's promises to his detriment, the complaint's allegations allow the reasonable inference that his defense tactics and strategy were influenced by the procedures that Loyola represented would govern his disciplinary proceedings. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 745 (D.C. Cir. 1998) (affirming the district court's determination that a reasonable jury could find that an employee "reasonably relied on the provisions of [an] employee handbook to his detriment in that he followed the handbook grievance procedures at the expense of much time and money"). The complaint alleges, for instance, that Doe "was not able to explain to Jane's hearing board that Elizabeth's

5

claims were baseless," ostensibly because he was under the impression—due to Loyola's assurances—that the board would be screened off from Elizabeth's complaint. Doc. 19 at ¶ 9.

Doe accordingly has adequately pleaded a promissory estoppel claim.

## II. Negligent Infliction of Emotional Distress

Doe's negligent infliction of emotional distress claim alleges that he suffered "physical harm, including severe emotional distress," due to Loyola's failure to fairly investigate and adjudicate his alleged misconduct. Doc. 19 at ¶¶ 228-234. "Generally, to state a claim for negligent infliction of emotional distress [under Illinois law], a plaintiff must allege the traditional elements of negligence: duty, breach, causation, and damages." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58 (Ill. 2016); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (similar). Illinois law imposes different standards for "direct" and "bystander" negligent infliction of emotional distress plaintiffs. *Schweihs, LLC*, 77 N.E.3d at 58; *see also Lewis*, 561 F.3d at 702 (similar). Doe pursues only the direct victim theory. Doc. 39 at 12-13.

In addition to the elements set forth above, "a direct victim of alleged negligent infliction of emotional distress must satisfy the 'impact' rule." *Lewis*, 561 F.3d at 703; *see also Schweihs*, 77 N.E.3d at 59-62 (reaffirming the impact rule). "Under the impact rule, a direct victim may not recover … unless the emotional distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" *Lewis*, 561 F.3d at 703 (quoting *Rickey v. Chi. Transit Auth.*, 457 N.E.2d 1, 2 (Ill. 1983)). A direct victim need not, however, allege that he "suffer[ed] physical manifestations resulting from the emotional distress … ; emotional injuries alone will suffice." *Ibid*. (citing *Corgan v. Muehling*, 574 N.E.2d 602, 609 (Ill. 1991)); *see also Schweihs*, 77 N.E.3d at 61 (explaining that *Corgan* held that a direct victim plaintiff need not allege "that

6

she suffered a physical symptom of her emotional distress," but "did not eliminate the need for a direct victim to allege and prove a contemporaneous physical injury or impact").

Loyola seeks dismissal on the ground that Doe fails to allege that he suffered a contemporaneous physical impact or injury. Doc. 28 at 9-10. Doe concedes that Loyola did not "physically act" on him, but he submits that his physical symptoms of emotional distress are sufficient to support a negligent infliction of emotional distress claim under Illinois law. Doc. 39 at 12-13 & n.3.

Doe gets the impact rule backward. He need not—but does—allege that he suffered "physical symptom[s] of [his] emotional distress." *Schweihs*, 77 N.E.3d at 61. And he must—but does not—allege a "physical injury or impact" that was "contemporaneous" with (and thus necessarily distinct from) his emotional distress. *Id*. at 62. Doe's contention that physically manifested emotional distress *is* a "physical injury" of the kind required by the impact rule, Doc. 39 at 13 n.3, is foreclosed by Illinois law. *See Schweihs*, 77 N.E.3d at 56, 62 (affirming the dismissal of a negligent infliction of emotional distress claim where the plaintiff alleged that she suffered physical symptoms of emotional distress but "did not plead any physical contact"); *id*. at 61 ("[T]here was no question in [*Corgan*] that the plaintiff had suffered a physical impact, as her claim rested on allegations of sexual relations with her therapist."); *Cleveland v. Rotman*, 297 F.3d 569, 571, 574 (7th Cir. 2002) (holding that the plaintiff estate did not satisfy the impact rule where it alleged that the defendant's legal malpractice caused the decedent's severe depression and death by suicide, reasoning that "the estate did not allege that [the defendant's] negligence caused [the decedent] a *physical injury that directly caused* his emotional distress") (emphasis added). Doe's negligent infliction of emotional distress claim is therefore dismissed.

**Conclusion**

Loyola's motion to dismiss is granted in part and denied in part. The negligent infliction of emotional distress claim is dismissed. The dismissal is without prejudice, and Doe will be given until September 4, 2019, to file a second amended complaint that repleads the claim. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). If Doe does not replead the claim, the dismissal will convert automatically to a dismissal with prejudice.

August 13, 2019

United States District Judge