IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>            Plaintiff,<br><br>    v.<br><br>LOYOLA UNIVERSITY CHICAGO,<br><br>            Defendant. | No. 18 CV 7335<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff's Motion to Compel Production of Documents. [ECF No. 60]. For the reasons discussed below, Plaintiff's Motion is granted.

Plaintiff John Doe ("Doe") filed suit against Defendant Loyola University of Chicago ("Loyola") after Doe was expelled from the school following a hearing concerning sexual assault allegations against him by a female student, Jane Roe ("Roe"). As detailed in Doe's amended complaint, Doe accuses Loyola, among other things, of adopting a "gender-biased system for investigating and adjudicating accusations of sexual misconduct made by female complainants against males" in response to the United States Department of Education's 2011 "Dear Colleague" Letter and its subsequent 2014 "Questions and Answers." Amended Complaint [ECF No. 19] at ¶ 1. Loyola, according to Doe, applied policies inherently biased against males and in favor of females during its investigation and hearing process regarding the allegations against him.[1]

---

[1] Roe and another female student filed contemporaneous complaints of sexual assault against Doe in 2016. Although Doe was found not responsible after a hearing on the second accuser's allegations, the existence of a second accuser is relevant to this case in some respects.

Amended Complaint [ECF No. 19] at ¶ 1. These biased policies, Doe contends, ultimately led to his expulsion from the university.

Discovery is ongoing in this case. As part of his first set of document requests directed at Loyola, Doe sought the following two categories of information:

> "17. All documents, for each academic year from 2009-10 through the present, that refer or relate to reports, audits, compilations, graphs, and statistics prepared by or for the University regarding disciplinary proceedings related to violations of the Sexual Misconduct Policy, including but not limited to such data as (a) the number of sexual harassment, sexual misconduct (including sexual assault), dating violence, domestic violence, and stalking incidents reported each year, (b) the type of alleged misconduct or violation, (c) the charge(s) brought against the accused, if any, (d) the date of the Hearing, if a Hearing was held, (e) the names of the Hearing Board members, (f) the findings of the Hearing Boards, (g) the sanction(s) imposed, (h) the appeal, if any, (i) the name of the Appellate Officer, and (j) the outcome of the appeal – with the names of all involved students redacted, but the gender of the students indicated.
>
> 18. All hearing board opinions and decisions of appellate officers relating to proceedings held pursuant to the Sexual Misconduct Policy, from academic year 2009-10 to the present, with the names of all involved students redacted, but the gender of the students indicated."

Plaintiff's Motion to Compel [ECF No. 60-1] at 9-10.

The academic hearing process in this case took place in 2016 and 2017. Loyola produced documents responsive to the above requests from 2013 to the present. Loyola objects, however, to any production of documents from 2009 to 2013, as the files for those years are, in its opinion, irrelevant to Doe's gender bias claims. Specifically, Loyola argues that even if it changed the process by which it handled sexual assault allegations in response to the 2011 Dear Colleague Letter, that change is irrelevant to whether gender bias permeated Doe's disciplinary proceeding five years later. Loyola further highlights that the "Decision Makers" – a group which encompasses the two investigators, three hearing board members, one appellate officer, and one Title IX coordinator involved when a sexual assault complaint is lodged – in Doe's disciplinary proceeding were not involved in the investigation or resolution of any sexual misconduct complaints prior to

2013. Decisions by different Decision Makers, in Loyola's view, therefore have no bearing on whether gender bias infected the process conducted by the Decision Makers in Doe's case. Loyola further warns that the production of these additional documents could jeopardize confidential information about other students. Doe maintains the documents are not only demonstrably relevant under recent Seventh Circuit precedent, including *John Doe v. Purdue Univ.*, 928 F.3d 652, 668 (7th Cir. 2019), but production of the documents he seeks also is proportional to the needs of this case based on the broad language of his complaint. The Court agrees the issue is properly framed as turning initially on the asserted relevance of the material Doe is requesting under Rule 26(b)(1) and then on whether production of those documents is proportional to the needs of this case.

### A. General Principles

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party. FED.R.CIV.P. 26(b)(1). Because the purpose of discovery is to help "define and clarify the issues," relevance is to be construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also, Tice v. American Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000) ("the scope of discovery should be broad in order to aid in the search for truth."). "If relevance is in doubt, courts should err on the side of permissive discovery." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004). If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper. *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366, at *2 (N.D. Ill. 2019); *Sanyo Laser Prod. Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 499 (S.D. Ind. 2003).

Relevance, though, is not the end of the inquiry under Rule 26. The 2015 amendments to Rule 26(b)(1) expressly inserted the concept of "proportionality" into the Rule by adding language that discovery not only must be relevant to a claim or defense but also "proportional to the needs

3

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

The discovery Doe seeks in response to Document Requests 17 and 18 appears directly relevant to the allegations contained in Doe's complaint. Indeed, the first sentence of Doe's complaint reads: "*In response to the United States Department of Education's "Dear Colleague" letter* and 2014 Questions and Answers, Loyola adopted a gender-biased system for investigating and adjudicating accusations of sexual misconduct made by female complainants against males." Amended Complaint [ECF No. 19] at ¶ 1 (emphasis added). As Doe's discovery requests appear relevant to the claims and defenses in this case, Loyola bears the burden, as the party resisting discovery and in light of the ordinary presumption in favor of broad disclosure, to establish the documents are not relevant and should not be produced. *See, e.g., Sanyo Laser Prod. Inc.*, 214 F.R.D. at 499. Loyola has not met that burden here. In so finding, the Court has weighed the importance of the issues at stake in this litigation – which implicate both personal and public interests – as well as Doe's relative access to the information requested, the importance of this particular discovery to the litigation, and the burden on Loyola in producing the information requested. The Court also has taken into account the confidentiality interests of non-party students. After considering the totality of the circumstances and in the exercise of its broad discretion over discovery matters, *Matter of Ingram Barge Co.*, 306 F.R.D. 184, 185 (N.D. Ill. 2014), the Court finds Loyola has not shown Doe's discovery requests are improper and, in fact, the requests are both relevant and proportional to the needs of the case. Loyola must therefore produce responsive documents from 2009 to 2013.

## B. Relevance

The information Doe seeks through Document Requests 17 and 18 is directly relevant to Doe's claims that Loyola's disciplinary process became infected by gender bias in response to the 2011 Dear Colleague Letter; gender bias which, in turn, Doe alleges led to his expulsion from Loyola. Indeed, just as in *Doe v. Purdue Univ.*, Doe's complaint in this case does not exist in a vacuum. 928 F.3d 652. It is cast against the "backdrop" of the 2011 "Dear Colleague" Letter, which as the Seventh Circuit explained, "ushered in a more rigorous approach to campus sexual misconduct allegations by, among other things, defining 'sexual harassment' more broadly than in comparable contexts, mandating that schools prioritize the investigation and resolution of harassment claims, and requiring them to adopt a lenient 'more likely than not' burden of proof when adjudicating claims against alleged perpetrators." *Doe v. Purdue Univ.,* 928 F.3d at 668 (citing United States Department of Education, Office of the Assistant Secretary for Civil Rights, Dear Colleague Letter (2011), https:/www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html) (internal citations omitted).

Under the facts of Doe's broadly pled complaint, whether and how Loyola overhauled its disciplinary procedures in response to the 2011 Dear Colleague Letter is relevant as a discovery matter. If Loyola, to protect its federal funding, skewed the disciplinary and investigative process against men to demonstrate its compliance with the federal mandate outlined in the letter, as Doe alleges it did, this may contribute to an inference of gender discrimination. At the very least, Doe is entitled to discovery on this issue, as the scope of discovery must be broad enough to effectuate the primary purpose of discovery: to define and clarify the issues. *Tice,* 192 F.R.D. at 272.

Whether the documents Doe seeks from 2009 to 2013 – or those that Loyola already produced from 2013 to the present, for that matter – ultimately will be admissible at trial is a

5

separate question the Court need not, and cannot, decide at this early stage. "Because discovery is concerned with 'relevant information' – not 'relevant evidence' – the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence 401." *Martinez v. Cook Cty.*, 2012 WL 6186601, at *2 (N.D. Ill. 2012). While Doe ultimately must allege and prove facts sufficient to establish Loyola acted, at least partly, on the basis of sex in his *particular* disciplinary proceeding, Doe's burden in the context of this discovery dispute is lower than his burden of proof at trial. In this context, Doe must show the information he seeks is relevant and proportional to a claim or defense under Rule 26(b)(1). In the Court's view, he has met that burden.

Recent precedent supports the Court's conclusion and suggests the nature and extent of the impact of the 2011 Dear Colleague Letter on an academic institution is relevant to evaluating the plausibility of a Title IX claim against that institution. *Doe v. Purdue Univ.*, 928 F.3d at 669 ("[t]he letter and accompanying pressure gives [the plaintiff] a story about why [the institution] might have been motivated to discriminate against males accused of sexual assault."); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (training and educational materials adopted in response to federal government pressure were relevant to establishing gender-biased conduct); *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir. 2016); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (plaintiff stated a plausible complaint of gender bias through combined external pressure and empirical evidence of alleged gender-biased conduct by his adjudicator). And while asserted pressure resulting from the 2011 Dear Colleague Letter "alone is not enough to state a claim that the university acted with bias in this particular case," *Baum*, 903 F.3d at 586, it is one piece of the puzzle: a piece that Doe is entitled to explore through discovery. While the cited cases addressed

6

motions to dismiss or for summary judgment, the language and rationale of those decisions support the Court's analysis for purposes of this discovery motion.

As summarized above, other courts, including the Seventh Circuit, have indicated that the 2011 Dear Colleague Letter provides a relevant "backdrop" to a Title IX gender bias claim under certain circumstances. And while it is certainly possible that Loyola's attempts to comply with the Department of Education's guidance will not help Doe prove his claims that anti-male institutional bias tainted his disciplinary proceeding, these facts only can be flushed out through discovery. *See, e.g., Doe v. Miami Univ.,* 882 F.3d at 594 ("Discovery may reveal that the alleged patterns of gender-based decision-making do not, in fact, exist. That information, however, is currently controlled by the defendants, and [the plaintiff] has sufficiently pleaded circumstantial evidence of gender discrimination."). At this stage, Doe's allegations that Loyola implemented anti-male policies to demonstrate its compliance with the 2011 Dear Colleague Letter and protect its federal funding are sufficient to obtain discovery on the issue. Whether Doe ultimately can prove-up facts particular to his case and survive a different standard of review, such as on summary judgment, is another question for another time. *See, e.g., Doe v. Vanderbilt Univ.,* 2019 WL 4748310, at *7 (M.D. Tenn. 2019) ("when courts consider allegations of external pressure, they look to see if a plaintiff has alleged facts demonstrating that it was pressure not only to aggressively pursue sexual assault cases, but to do so in a manner biased against males.") (internal quotations omitted); *Doe v. Columbia Coll. Chicago,* 933 F.3d 849, 855 (7th Cir. 2019) (where plaintiff failed to allege any particularized facts that could lead to a reasonable inference that Columbia denied him an educational benefit because of his sex, broad allegations of pressure from the Dear Colleague Letter and Office of Civil Rights investigations were insufficient to sustain plaintiff's Title IX claims at a motion to dismiss);

Loyola advances two principal arguments in its effort to resist discovery relating to Document Requests 17 and 18. First, Loyola asserts that this case turns on "how the *particular personnel* involved with this particular plaintiff's case applied the institution's internal procedures to him, as compared to how *those same personnel* applied those same procedures to women." [ECF No. 67] at 4 (emphasis added). In support of that statement, Loyola cites *Doe v. Purdue Univ.*, 928 F. 3d at 669 (to state a claim of gender bias in his internal proceeding, male student must allege "facts raising the inference that [university] acted at least partly on the basis of sex in his particular case"). In this case, Doe has particularized his allegations of discrimination with reference to his individual case, and Loyola has filed an answer to Doe's Complaint. [ECF No. 26]. Evidence that Doe says he wants to use to show that the individual participants in the process, i.e. the Decision Makers at the time of Doe's disciplinary proceeding, implemented inherently biased *institutional* policies strikes at the heart of Doe's Title IX claims. As Doe points out, his claim is against Loyola, not the individual Decision Makers. Evidence regarding Loyola's pattern and practice in handling sexual assault allegations over time is relevant here. *See, e.g., Doe v. Ohio State University*, 2015 WL6082606 (S.D. Ohio 2015) ("Stated simply, if The Ohio State University has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation. Determining whether such a problem exists necessitates looking at the data and the context surrounding that data."); *Doe v. Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Pa. 2017).

Second, Loyola urges the Court to limit the scope of recent precedent in *Purdue, Baum,* and *Columbia College* and find that general pressure exerted by the 2011 Dear Colleague Letter is irrelevant unless acute pressure from an OCR Investigation or media coverage simultaneously exists. The Court does not read these cases so narrowly, and the opinions cited by both Doe and

8

Loyola, frankly, suggest the opposite reading is more accurate. The existence of acute pressure is simply an additional factor courts have considered at the motion to dismiss or summary judgment stage in determining whether the plaintiff stated a plausible claim for gender bias. *See, e.g., Purdue*, 928 F.3d at 668; *Baum*, 903 F.3d at 586. Certainly, evidence that an institution had its feet to the fire, so to speak, in the form of active student protests or ongoing civil rights investigations may carry more weight in evaluating the plausibility of a plaintiff's claim than the mere existence of general pressure from the federal government and threats to an institution's federal funding. But this does not mean that the latter factors do not bear consideration in evaluating the plausibility or the ultimate merit of a plaintiff's Title IX claim.

Whether or not "acute pressure" is necessary to establish a plausible claim for gender bias, it bears noting that Doe does allege Loyola was dealing with student "outrage" and negative media coverage contemporaneous with Doe's hearing. Specifically, Doe alleges in his Amended Complaint that in December of 2016, Loyola was facing "severe public criticism" for its handling of sexual assault allegations. Amended Complaint [ECF No. 19] at ¶ 117. "A petition demanding an apology from the University 'for its lack of transparency' and failure to educate 'the Loyola community about rape culture and sexual violence'" was circulating among the student body. Amended Complaint [ECF No. 19] at ¶ 118. Doe cites several newspaper articles that, at first blush, suggest Loyola may in fact have been facing "acute pressure" to crack down on individuals – or just men, if Doe's allegations are borne out – accused of sexual misconduct, as was the case in *Purdue* and *Baum*. Amended Complaint [ECF No. 19] at ¶¶ 117-20. These allegations in Doe's Amended Complaint also weigh in favor of the Court's relevance finding here.

The information Doe seeks may, in fact, reveal specific facts in support of the very pattern or practice of gender bias Loyola disclaims. Or it may not; but Doe is entitled to the information

9

nonetheless. Doe's complaint is not so devoid of facts in support of an alleged pattern or practice of gender bias that Doe should be foreclosed from the discovery currently sought on this issue. Doe has alleged specifically that Loyola adopted a gender biased, "'survivor-centered approach' to sexual misconduct allegations that overtly protected and favored female complainants, presumed a violation of University policy had occurred, placed upon accused male students the burden of proving their innocence, and accorded special treatment, including legal assistance, to one party, the female "complainant"/"survivor," but not to the other party, the accused male student." Amended Complaint [ECF No. 19] at ¶ 59. These gender biased policies, Doe claims, manifested in several ways during his hearing. For example, Doe alleges Loyola's Interim Title IX Coordinator warned Doe that he may be subject to inappropriate bias during the hearing if the Hearing Board learned he was under investigation for two complaints at the same time. Amended Complaint [ECF No. 19] at ¶ 96. Doe then alleges that the Interim Title IX Coordinator informed the chairperson of Roe's Hearing Board that Doe was the subject of another complaint – a complaint for which Doe ultimately was found not responsible. Amended Complaint [ECF No. 19] at ¶¶ 96-97, 145.

Doe further claims that the Board refused to interview his suggested witnesses and consider exculpatory evidence he, a man, presented, yet did interview witnesses and consider evidence suggested by Roe, a woman. Amended Complaint [ECF No. 19] at ¶¶ 114-15. Similarly, Doe alleges Loyola repeatedly told him incorrect information regarding the procedure for the investigation and hearing, including that he was not entitled to have an advisor at his interview with investigators, even though the Community Standards allowed him to have an advisor present. Amended Complaint [ECF No. 19] at ¶¶ 89, 102. Doe further asserts that the University applied two sets of rules for evaluating facts presented by his female accuser versus those presented by

Doe; for example, that Roe was applauded for correcting a mistaken fact in the record, whereas Doe claims he was found to be not credible for the same behavior. Amended Complaint [ECF No. 19] at ¶¶ 1, 6.

The facts Doe has alleged – though certainly only allegations at his time – provide enough specificity and context for Doe's gender bias claim to entitle him to relevant and proportional discovery on these issues, consistent with the Court's order here.

### C. Proportionality

The information sought by Document Requests 17 and 18 is, as discussed above, relevant within the meaning of Rule 26(b)(1). The question then becomes whether it is proportional to the needs of the case. Taking each factor in turn, Doe's relative access to the information requested is limited. The case files and hearing opinions at issue are controlled exclusively by Loyola, and absent production as part of discovery in this case, Doe has no recourse or ability to access the information on his own. As stated above, the particular information Doe is seeking goes to the heart of Doe's complaint, as Doe expressly frames his Title IX claims against the backdrop of the 2011 Dear Colleague Letter and the alleged gender biased impact it had on Loyola's disciplinary proceedings. The comparable data at issue in this motion will help to establish, or refute, Doe's contention that Loyola has a pattern and practice of handling sexual assault allegations in a gender biased manner. The importance of this information in the scheme of this case, therefore, weighs in favor of disclosure here.

The Court also has evaluated the likely burden on Loyola to produce the responsive documents. Loyola complains that the production would be unduly burdensome and estimates that it would need to produce approximately 52 more cases, although perhaps slightly less given that Loyola has since produced documents from 2013 to 2014 previously included in the estimate.

11

Loyola specifies that this production would include about 1,000 additional pages of documents (or again, perhaps somewhat less than that number). In the Court's view, this volume is not unduly burdensome in a case such as this.

Protecting the confidentiality and privacy interests of all individuals involved in allegations of sexual assault, especially those of non-party students, is important to the Court. These interests are also important to both Loyola and Doe, who current enjoys the benefit of that very confidentiality for purposes of this lawsuit. While important, these privacy interests do not prevent discovery of the documents requested here any more than they prevented Loyola from producing documents with identical privacy concerns related to hearings from 2013 to 2019. It is clear to the Court, based on Loyola's previous document production, that the parties have a workable protocol in place that satisfies both Doe's right to obtain responsive documents and the privacy interests Loyola has raised. The Court is confident the parties will implement their previously agreed-upon protocol for similar document production and do so in a manner that continues to safeguard the confidentiality of all parties and non-parties involved.

As the Seventh Circuit has emphasized, "there is a strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002). That public policy applies equally to this discovery dispute. The materials requested here are not only relevant to Doe's claims but proportional to the needs of the case considering the totality of the circumstances and specific factors discussed above.

For all these reasons, Plaintiff's Motion to Compel Production of Documents [ECF No. 60] is granted. Loyola shall produce by February 7, 2020 the documents that are responsive to Doe's Document Requests 17 and 18. The Court set this date on the assumption that Loyola already has searched for and assembled the documents that are the subject of Doe's motion because it

knows the production will involve about 1,000 pages. If that is not true, then the parties can meet and confer and suggest a different, agreed date consistent with the approaching close of fact discovery.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 24, 2020