**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No: 18-CV-7335** |
| | ) | |
| v. | ) | **Hon. Steven C. Seeger** |
| | ) | **Magistrate Judge Jeffrey T. Gilbert** |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LOYOLA UNIVERSITY OF CHICAGO'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Loyola University of Chicago ("Loyola" or the "University"), by and through

its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, respectfully moves

for summary judgment on Counts I, II, and III of the Amended Complaint. In support of its motion,

Loyola submits the accompanying Memorandum and Statement of Material, Undisputed Facts

Pursuant to Local Rule 56.1, and states as follows:

1.      Plaintiff John Doe ("John"), a former undergraduate student at Loyola, had three

sexual encounters with "Jane Roe," a female undergraduate student, in January 2016.  Jane first

raised concerns about the encounters to Loyola in January 2016 and filed a formal complaint

accusing John of gender-based misconduct in October 2016.  Another female student, "Elizabeth,"

also filed a charge of gender-based misconduct against John in October 2016.  Jane alleged "non-

consensual sexual penetration" and "non-consensual sexual contact" based on her sexual

encounters with John, and sexual harassment based on John's conduct one week later that included

0

unwelcome sexual comments and texts. Elizabeth's complaint also alleged sexual misconduct against John.

2.      Loyola followed its policies and procedures, which called for an investigation and a hearing, in investigating and adjudicating the complaints against John. Two Investigators interviewed John, Jane, and another witness; audio recorded the interviews; used the recording to prepare interview summaries; received documentary evidence from John and Jane; and created a final investigation report which the parties reviewed before the hearing.

3.      The hearings on Jane's and Elizabeth's complaints took place on December 14, 2016 and December 16, 2016, respectively, before two separate three-member hearing boards. The hearing board for Elizabeth's case issued a decision letter finding John not responsible for any alleged policy violation. The hearing on Jane's complaint lasted approximately three hours. John and Jane attended, accompanied by their advisors, and presented testimony directly to a three-person hearing panel ("Hearing Board"). The investigators also attended.

4.      After the hearing and careful deliberation following the hearing, and based upon all evidence and testimony presented in the final investigative report and at the hearing, the Hearing Board unanimously determined that Jane's account was more credible than John's and that John was responsible for "non-consensual sexual penetration" and "non-consensual sexual contact" based on conduct found more likely than not to have occurred during the first and second encounters. The Hearing Board found John not responsible for sexual harassment and that there was no non-consensual conduct during the third encounter.

5.      The Hearing Board found Jane more credible than John for several reasons, including Jane's consistent description of events and her description of a series of interactions in their first encounter where John pursued sexual interaction despite Jane's explicit rejection of his

1

attempts to do so and without mutually understandable permission from Jane. The Hearing Board also found that John contradicted himself by telling the Investigators that he and Jane discussed "coercion" the next time they were together and twice certifying that statement in his witness summary but, at the hearing, changing his testimony to deny both that such a conversation with Jane ever happened and that John ever told the Investigators that it did, in a way that conflicted with the credible testimony of one of the investigators. The Hearing Board also doubted John's belief about consent based on a text John sent to Jane, before she ever accused him of wrongdoing, suggesting Jane might accuse him of rape.

6.      The Hearing Board determined that John's violations of sexual penetration and sexual contact without consent warranted expulsion. John appealed the decision. The appeal officer reviewed written submissions from John and Jane and issued a written decision denying the appeal.

7.      After his expulsion from Loyola, John applied in 2017 to transfer to "University X". Loyola personnel supported the transfer effort and John was admitted to University X. In November 2017, after transferring to University X, John Doe filed a complaint with Loyola alleging that, in the same encounter he previously described as consensual, Jane engaged in the sexual activity during their third encounter without John's consent. In his first meeting with Loyola regarding the complaint, John admitted he did consent and that his complaint was not accurate.

8.      In his Amended Complaint, filed on November 27, 2018, John asserted three claims:   gender discrimination under Title IX (Count I), breach of contract (Count II), and promissory estoppel (Count III).[1] John's Title IX claim asserts that his expulsion was the result of

---

[1] Plaintiff also asserted negligent infliction of emotional distress, which was dismissed on August 13, 2019.

gender bias and seeks to base this claim on alleged procedural flaws and alleged systemic gender bias in the University's gender-based misconduct process. John's breach of contract claim alleges that procedural requirements from the Community Standards were not followed in Jane's case. The promissory estoppel claim similarly alleges that procedural requirements were not followed and that John relied to his detriment on alleged promises about the disciplinary proceedings.

9.      With respect to Count I, the Seventh Circuit's test for Title IX discrimination claims is: do the facts support an inference that a student was disciplined "on the basis of sex"? *Johnson v. Marian Univ.*, 829 F. App'x 731, 732 (7th Cir. Nov. 20, 2020). A plaintiff's allegations of gender-biased events or political or other pressure, without "facts creating an inference that, in *his specific case,* the institution treated him differently because of his sex," do not create a triable Title IX issue. *Id.* at 732. Facts creating only an inference of "pro-victim" bias for "survivors" of sexual misconduct do not, as a matter of law, create any inference of gender bias because "both women and men can be victims of sexual assault." *Id.* at 733; *Doe v. Univ. of Denver,* 952 F. 3d 1182, 1195-1196 (10th Cir. 2020); *Rossley v. Drake Univ.,* 979 F. 3d 1184, 1194-1195 (8th Cir. 2019). The Seventh Circuit has also held that arguing that an internal disciplinary decision was "against the weight of the evidence . . . does not imply that the [institution's] decision was based on [respondent's] gender." *Columbia Coll. Chi.,* 933 F. 3d 849, 856 (7th Cir. 2019). *See also Univ. of Denver,* 952 at 1194; *Drake Univ.,* 979 F. 3d at 1193. Five different circuit courts have considered claims and arguments such as Plaintiff presents in this case and granted summary judgment to the university-defendant for reasons that require summary judgment in favor of Loyola here. *Marian Univ.*, 829 F. App'x 731; *Univ. of Denver,* 952 F. 3d 1182; *Drake Univ.,* 979 F. 3d 1184; *Doe v St. Joseph's Univ.,* 832 F. App'x 770 (3rd Cir. 2020); *Doe v. Trs. of Boston College*, 892 F.3d 67 (1st Cir. 2018).

3

10.     Loyola is entitled to summary judgment on John's Title IX claim because, first, the evidence shows that the findings of the Hearing Board and appeal officer in John's case were supported by, and based on a thorough, thoughtful weighing of the evidence.  The Seventh Circuit and other circuit courts recognize that courts should not second-guess the merits of evidence-based decisions but, rather, should refuse to infer gender bias at summary judgment merely from a plaintiff's disagreement with how evidence was weighed when there was evidence "in favor of [the] claim that the sexual encounter was not consensual."  *Univ. of Denver,* 952 F. 3d at 1198; *Drake Univ.,* 979 F. 3d at 1193; *Columbia Coll. Chi.,* 933 F. 3d at 856; *Doe v. Marian Univ.*, No. 19-cv-388-JPS, 2019 WL 7370404, at *9 (E.D. Wisc. Dec. 2019).

11.     Second, John cannot avoid summary judgment based on various conclusory assertions that lack any evidentiary support.  Specifically, he fails to create an issue of fact as to his allegation that his advisor was treated less favorably than Jane's during the hearing, as the evidence belies those assertions.  Courts have also squarely rejected his argument that Loyola's use of "survivor" language illustrates a bias by Loyola against men.  *Marian Univ.,* 829 F. App'x at 733 (ruling an investigator's comments that a policy violation had occurred based solely on complainant's statement "divorced from gender"); *Univ. of Denver,* 952 at 1196-97 (recognizing policies with gender-neutral language, training materials, or officials referring to complainants as "survivors," "empower the survivor," or "communicate you believe the survivor" are "gender-neutral"); *St. Joseph's Univ.,* 832 F. App'x  at 774 (presentation encouraging students to believe and support those who claim to be victims of sexual violence is "gender neutral"); *Drake Univ.,* 979 F. 3d at 1194 ("victim-centered" materials not gender bias).  John also cannot create any gender bias inference from any of the five procedural flaws asserted during adjudication of his case because discovery yielded a lack of any evidentiary support.

HB: 4846-8554-4925.1

12.     Third, John's attempt to create an inference of gender in his particular case based on assertions of "systemic" gender bias fails, because the actual data reveal that men accused of gender-based misconduct charges at Loyola were treated in even-handed fashion.  Plaintiff's argument, presented through his expert witness, is based on a premise that has been rejected by numerous courts:  that men and women are expected to be charged with sexual misconduct offenses in equal proportions and that Loyola somehow controls the flow of complaints it receives to adjudicate.  *Univ. of Denver*, 952 F. 3d at 1194; *Drake Univ.*, 979 at 1195.  Courts have rejected this type of misguided statistical analysis as incapable of creating any inference of gender bias at the summary judgment stage.  *Univ. of Denver*, 952 F. 3d at 1194 ("A factfinder could not reasonably infer from bare evidence of statistical disparity in the gender makeup of sexual-assault complainants and respondents that the school's decision to initiate proceedings against respondents is motivated by their gender"); *Drake Univ.*, 979 at 1195.  Such statistical analysis fails to "eliminate obvious nondiscriminatory explanations for the disparity," which include "that male students on average ... committed more serious assaults, that sexual-assault victims are likelier to be women, or that female victims are likelier than male victims to report sexual assaults."  *Univ. of Denver*, 952 F.3d at 1193-94 (collecting cases).  Courts have also disregarded statistics about who is accused because the "gender of students accused of sexual assault is the result of what is reported to the University, not the other way around."  *Doe v. Trustees of Boston College,* 892 F. 3d 67 at 92 (1st Cir. 2018); *see also Univ. of Denver,* 952 F. 3d at 1194 ("gender makeup of sexual assault perpetrators, victims, and reporters – are almost completely beyond the control of the school").

13.     Fourth, Plaintiff cannot establish an inference of gender-bias based on the content of Loyola's training materials for Title IX personnel, including some references to complainants

5

as "survivors" or "victims" or other gender-specific references. The outcomes of gender-based misconduct claims for male respondents belie any gender-bias inference from any cause, training or otherwise. And, as other courts have found, training material references to "survivors" or other complainant-focused considerations could show, *at most*, a bias in favor of complainants, which is insufficient as a matter of law to create a reasonable inference of *anti-male* bias. *Univ. of Denver*, 952 F.3d at 1196-97 (explicitly denying gender bias inference from training materials and collecting cases); *Marian Univ.,* 829 F. App'x at 733; *see also Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 956–57 (N.D. Ill. 2017).

14.     Finally, John cannot create an issue of material fact regarding his argument that pressure from the government, the national media, or the University community regarding the University's response to sexual assault led Loyola to expel John because he is male. With respect to alleged pressure stemming from federal guidance in the form of the 2011 "Dear Colleague Letter" ("DCL") and 2014 "Questions and Answers on Title IX and Sexual Violence" ("FAQ"), numerous other federal courts have rejected arguments that schools' efforts to comply with such guidance creates any gender bias inference. *See Univ. of Denver*, 952 F.3d 1182, 1192-93 (10th Cir. 2020) (DCL "is gender-neutral on its face") (citing *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019)); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). John would need to present evidence of a "particularized 'something more'" that would indicate gender bias against him in his particular case; such evidence completely lacking here. *Columbia Coll. Chi.*, 933 F.3d 856; *Univ. of Denver,* 952 F.3d at 1192-93. John also fails to raise an inference of gender-bias based on media reports about Title IX issues at Loyola concurrent with the adjudication of his case, because the media reports John points to merely reflecting public interest in gender-based misconduct issues and the University's process for handling complaints, and are the type courts have found not capable of

HB: 4846-8554-4925.1

supporting any gender-bias inference *Univ. of Denver,* 952 F. 3d at 1198 (noting evidence required

is "substantial criticism from the student body and the public media accusing the school of not

taking seriously complaints of *female* students alleging sexual assault by *male* students"); *St.*

*Joseph Univ.,* 832 F. App'x at 774-775 (collecting cases and noting all rely on media pressure with

"specific intent to punish males."). There is also no evidence that anyone involved in adjudicating

John's case was influenced by any media reports at the time of the December 2016 and January

2017 decisions, or that Loyola's outcomes in gender-based misconduct matters targeted male

respondents or otherwise mistreated men.

15. For all of the reasons presented above, this Court should follow the Seventh Circuit

and several other circuit courts that have granted summary judgment on Title IX claims raised by

male respondents that lack evidence of gender bias and enter judgment in favor of Loyola on Count

I. *See Marian Univ.*, 829 F. App'x at 732-23; *Univ. of Denver,* 952 F.3d 1182; *Doe v. St. Joseph's*

*Univ.,* Nos. 19-2158 & 19-2260, 832 F. App'x 770 (3d Cir. Oct. 27, 2020); *Drake Univ.,* 979 F.

3d 1184 (8th Cir. 2020); *Doe v. Trs. of Boston Coll.,* 892 F.3d 67 (1st Cir. 2018); *see also Ross v.*

*Ball State Univ.,* No. 1:18-cv-01258, 2020 WL 1042623 (S.D. Ind. Mar. 4, 2020).

16. Loyola is entitled to summary judgment on Plaintiff's breach of contract claim in

Count II because the evidence does not show that Loyola's actions were "without any discernable

rational basis" as required under Illinois law. *DiPerna v. Chicago Sch. of Prof'l Psychology*, 893

F.3d 1001, 1007 (7th Cir. 2018). That is, John cannot show that Loyola's decisions were

completely irrational, or "such a substantial departure from accepted academic norms as to

demonstrate that the [university] did not actually exercise professional judgment." *Id.* (quoting

*Raethz*, 805 N.E.2d at 699). The record of the University's rational basis is clear: Loyola

determined that evidence from the internal proceeding supported a determination that John

7

violated the gender-based misconduct standards for all the reasons presented above and in its supporting memorandum. Additionally, Count II fails because the record evidence clarifies that there was no breach of any contractual promise.

17. Finally, Loyola is entitled to summary judgment on Plaintiff's promissory estoppel claim in Count III, because John cannot maintain a promissory estoppel claim based on the terms of a contract between the parties. Moreover, for the reasons set forth above and in Loyola's supporting memorandum, the evidence establishes that Loyola did not make any unambiguous promises to John that were not kept, in the Community Standards or otherwise.

18. For the foregoing reasons, as fully described in the Memorandum of Law in support of this Motion, Loyola University of Chicago respectfully requests that this Court enter summary judgment in its favor on Counts I-III of Plaintiff's Amended Complaint.

Dated: February 3, 2021

Respectfully submitted,

LOYOLA UNIVERSITY OF CHICAGO,

By: ___/s/ Peter G. Land___
One of Its Attorneys

Peter G. Land
Peter.Land@huschblackwell.com
Gwendolyn B. Morales
Gwendolyn.Morales@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500

HB: 4846-8554-4925.1

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused the foregoing **DEFENDANT LOYOLA UNIVERSITY OF CHICAGO'S MOTION FOR SUMMARY JUDGMENT** to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following, this 3rd day of February, 2021:

Jonathan M. Cyrluk
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street Suite 2105
Chicago, IL 60601
Email: cyrluk@carpenterlipps.com

Patricia M. Hamill
Lorie Dakessian
CONRAD O'BRIEN PC
Centre Square, West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Email: phamill@conradobrien.com
          ldakessian@conradobrien.com


/s/   Peter G. Land

9

HB: 4846-8554-4925.1