UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | Case No: 18-CV-7335 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| LOYOLA UNIVERSITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SUPPLEMENTAL SUMMARY JUDGMENT SUBMISSION**

Pursuant to this Court's September 1, 2022 order, Defendant Loyola University of Chicago ("Loyola") submits supplemental information responding to this Court's questions.

I. **Rabia Khan Harvey Notes**

**Did the Board know anything about what Jane Roe had said to Khan Harvey, and is it factually correct that the Board never knew about Khan Harvey's impressions about what Jane Roe had said to Khan Harvey?**

It is factually correct that the Board never knew about Rabia Khan Harvey's ("Khan Harvey") impressions about what Jane Roe ("Jane") said to Khan Harvey and that the Board did not receive or review Khan Harvey's notes from the January 26, 2016 meeting with Jane.

**Is there anything in the record about why the Board did not receive that information, who decided not to share it, and why?**

Information about these questions is contained in the deposition transcript for Tim Love ("Love"). Love testified that he prepared the "History of the Case" section of the Final Investigative Report ("FIR"), reviewed Khan Harvey's notes from her January 26, 2016 meeting with Jane, and included reference to that meeting in the FIR. Dkt. 136-46 at PageID #3381. Love testified that he included information from Khan Harvey's notes about "the steps that were

1

taken, not necessarily the substance." *Id.* at PageID #3382. Love testified that he did not recall why he did not include Khan Harvey's impression that Jane "didn't believe that she was forced or coerced" and that he did not make a conscious choice not to include a reference to that impression. *Id.* at PageID #3383.

**Is there any evidence in the record about whether it would have made a difference to the Board, or if they would have done anything differently?**

Yes, there is evidence that knowing of Khan Harvey's notes would not have made a difference to the Board. The chair of the Board, Jessica Landis, testified as follows:

> Q: Is this something, a statement, to Rabia Khan that you would have wanted to know as part of your hearing of Jane's claim against John?
> A: I mean, this isn't necessarily inconsistent with what we have in the report.
> Q: So you don't believe that Jane reporting that she was not – she didn't believe she was forced or coerced is inconsistent with anything she's said at the hearing or to investigators or to any of the witnesses?
> A: I'm reading that that's really similar to what she said, talking about the interaction on Sunday.
> \*       \*       \*
> Q: At you – I just want to make sure I understand this. Are you saying that you don't believe that when Rabia Khan Harvey said 'while she doesn't believe, she,' Jane, 'was forced or coerced,' that that's only a reference to the Sunday, January 17th encounter and not a reference to the two separate occasions that she described in the sentence preceding?
> A: Again, I don't know what Rabia was thinking specifically when she wrote this or what she intended.
> Q: So I just want you to assume that Rabia is referencing – we could be wrong, but just for – we'll take her deposition and we'll find out, but just for today's exercise, I want you to assume that Rabia was referring to both January 13 and January 17. Would you have viewed a statement that Jane did not view the January 13th sexual encounters as being forced or coerced as contradictory to what she said in her interview with the investigators and at the hearing?
> \*       \*       \*
> A: She stated that she said "no" four times, and she was not listened to and things still happened. But that's just blatant; there was not permission to do that. That's not necessarily saying it was force or coercion. It was not listening to someone's request.
> Q: So are you saying, if you had the information that Jane had told Rabia Khan Harvey that the events on January 13, that Wednesday, were not forced or coerced, you wouldn't have put that on the whiteboard as an inconsistent statement with what she said at the hearing and in her interviews? Is that your testimony?

> A: What I can say is this: Looking at this right here, this line of 'while she doesn't believe she was forced or coerced,' that is not inconsistent with the information in the report, because in the report, she's saying she didn't give consent. She's not specifically saying she was forced. She's not specifically saying she was coerced. She's describing her interaction, she's not necessarily looking at force or coercion. She's looking at whether or not there was consent.

Dkt. 136-49 at PageID #3592-94. The other two hearing board members were asked less specific questions:

- Angela King-Taylor was asked if she would have wanted to know that Jane had told someone she did not believe she had been forced or coerced and said "not necessarily" and that such a statement was not necessarily relevant. Dkt. 128-28 (Ex. 24 to Pl.'s Rule 56.1(a)(3) Statement of Material Facts); and

- Brian Houze was not asked about Khan Harvey's note, but he testified that Jane's account did not assert that John forced or coerced her, and that the Board did not find that there was force or coercion. Dkt. 136-50, at PageID #3636-38.

## II. John Doe's two male witnesses

**Is there anything in the summary judgment record about John Doe asking the investigators to interview those witnesses, as opposed to simply assuming that the investigators would interview them?**

John Doe ("John") testified "I provided the interviewers with names of witnesses. I do not recall if I definitively asked them to interview them." Dkt. 136-43, PageID #3148. The two witnesses were referred to as Student A and Student B. John testified he specifically mentioned Student A during the interview but was not sure if he explicitly asked that he be interviewed. *Id.* at PageID #3147-48. He said that he did not consider getting a written statement from Student A or Student B before the hearing because he "assumed that Loyola would contact the witnesses I provided them with." *Id.* at PageID #3148. Investigator Leslie Watland ("Watland") testified that she had no memory of John requesting that Student B be a witness. Dkt. 136-47, PageID# 3427.

**If there is such evidence, is there anything in the record about why the investigators did not interview those two witnesses and did they try?**

3

Evidence relating to this question exists in the deposition transcripts of Watland and Investigator Ray Tennison ("Tennison"), as well as Watland's Declaration. Watland testified that she did not recall believing that Student B had any direct information about what had occurred and that she had no specific memory of considering interviewing Student B. Dkt. 136-47, PageID #3426-27. Watland's Declaration also stated that John mentioned two roommates and a friend, Student B, but did not state that any of them observed his sexual encounters with Jane or that he told either roommate or Student B about what happened during the sexual encounters. Dkt. 136-40, Page ID #3056. Tennison testified about whether he ever considered interviewing Student B and said he did not think that there was a discrepancy at issue in the case that Student B had knowledge about, and that it "did not appear that Student B would have anything to add to the story that we didn't already know." Dkt. 136-48, PageID #3492-93. He was sure that he and Watland had "some discussion" about what witnesses to interview and that they "interviewed everybody we deemed necessary to produce the report." *Id.* at PageID #3495.

**Is there anything in the record about what those witnesses would have said?**

The record contains references to what Students A and B might have said in Watland's Declaration, the FIR, and documents submitted for John's internal appeal, as follows:

Watland's Declaration (Dkt. 136-40, Page ID #3056)
- John mentioned his roommates (one of whom was Student A) and Student B during his interview, but did not state that any of them observed his sexual encounters with Jane;
- John said that Student B observed John and Jane in Jane's residence hall the night after the January 13, 2016 sexual encounter; and
- John did not report that he told either Student A or Student B about what happened during his sexual encounters with Jane.

The FIR (Dkt. 135-6, PageID #2490-91)
- after their first sexual encounter, John "walked her back to her residence hall where he saw his friend, [Student B]"; and
- after their last encounter, John's "friend, [Student B], sent a snapchat from Complainant's room that showed Complainant's personal copy of the LUC volleyball poster with [John Doe's] face scratched off of it."

4

Appeal documents:
- John's appeal claimed that "Respondent learned of the Complainant's claims that she was visibly shaken and upset following the sexual encounters," that Student A was present in the next room and could refute Complainant's demeanor testimony, and that Student B "could have refuted the Complainant's claims of lack of consent and the testimony with the witness based on conversations with the Complainant during the relationship." Dkt. 135-15, PageID #2589;
- Jane's appeal submission states that "I was not 'visibly shaken and upset after the encounters', so I am unsure why the Respondent is claiming that as part of my testimony. [Student A] can attest to the fact that I was not, which is the truth." Dkt. 128-36 (Ex. 32 to Pl.'s Rule 56.1(a)(3) Statement of Material Facts); also, the only evidence of Jane being "shaken" is the FIR recitation of Witness 1's interview stating that, on the night of the second encounter while in Jane's dorm room, Jane "was crying and 'was shaken about what had happened because she went [to Respondent's apartment] with the intentions of setting boundaries with him, telling him she wasn't comfortable, but instead it ended in a way she didn't want it to end – in the same way it ended on Wednesday." Dkt. 135-6, PageID #2493; and
- John's "supplement" to his appeal submitted three weeks after his initial appeal included:
    - Student A's declaration stating that he was in the common area of John's apartment the night of the first sexual encounter, that John and Jane went into John's bedroom for nearly an hour with the door shut, that Student A did not hear anything, and that Jane did not indicate any discomfort when she left. Dkt. 135-22, PageID #2631;
    - Student B's declaration stating that Student B spoke with John and Jane in Student B's dorm room the night of the first sexual encounter and they seemed "happy, were friendly with each other and talkative." Dkt. 135-22, PageID #2632
    - Neither declaration stated that either witness learned any information about the sexual encounters at issue. Dkt. 135-22, PageID #2631-32.[1]

Dated: September 8, 2022                    Respectfully submitted,

                                            LOYOLA UNIVERSITY OF CHICAGO

                                            By:    /s/ Peter G. Land
                                                   One of Its Attorneys

Peter G. Land
Peter.Land@huschblackwell.com
Gwendolyn B. Morales
Gwendolyn.Morales@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500

---

[1] This supplement was not considered by the appellate officer because it was not timely. Dkt. 135-14, PageID # 2582.

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the foregoing DEFENDANT'S SUPPLEMENTAL SUMMARY JUDGMENT SUBMISSION to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following counsel of record this 8th day of September, 2022.

Jonathan M. Cyrluk
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street Suite 2105
Chicago, IL 60601
Email: cyrluk@carpenterlipps.com

Patricia M. Hamill
Lorie Dakessian
CONRAD O'BRIEN PC
Centre Square, West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Email: phamill@conradobrien.com
      ldakessian@conradobrien.com

/s/ Peter G. Land